UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHINYE AZUH,

    Plaintiff,

v.

PROVIDENCE-PROVIDENCE PARK
HOSPITAL,

    Defendant.

Case No. 17-10585
Honorable Laurie J. Michelson

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS [16]**

Chinye Azuh was a resident physician at Providence Park Hospital. She believes that Providence discriminated against her because of her race and because she was pregnant during her residency. Azuh also maintains that this discrimination led her to quit the program. She thus sued Providence alleging multiple claims of discrimination and retaliation under state and federal law. Providence moves to dismiss the case on the grounds that Azuh did not file suit within 180 days of the alleged discriminatory activity as she agreed she would in her employment application.

For the reasons that follow, the Court will deny Providence's motion to dismiss.

**I.**

The following non-conclusory allegations are accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 679 (2009).

Azuh is an African-American woman who graduated from medical school in December 2013. (R. 1, PID 2.) At the end of March 2014, Providence accepted Azuh into its residency program at the hospital's Southfield campus. (*Id.*) A few days later, Azuh informed Providence that she was pregnant. (*Id.*)

In June 2014, soon after Azuh began her residency program, Dr. Karen Mitchell, the Program Director of Providence's Family Medicine Residency, called Azuh into a meeting. (R. 1, PID 3.) In this meeting, Mitchell instructed Azuh, over Azuh's objection, to take three months of maternity leave, which would delay her graduation from the residency. (*Id*.) Mitchell also expressed concerns about Azuh's ability to cope with the residency after having her child. (R. 1, PID 3–4.) Around that same time, another resident informed Azuh that individuals had been talking about her and voiced similar concerns about her ability to cope after returning from leave. (R. 1, PID 4.) Azuh was warned by this resident: "You had better do what you need to do so your child issues do not affect your work here." (*Id*.) Azuh completed her first two rotations. (*Id*.) Then, at the end of July 2014, she took about a month's maternity leave. (*Id.*)

Upon her return in August 2014, Azuh felt overly-scrutinized in her work and experienced an increasingly hostile work environment. (R. 1, PID 5.) She was bullied and residents and physicians refused to speak to her. (R. 1, PID 5.) Mitchell even started a rumor that Azuh was having difficulty coping with residency after childbirth. (*Id*.) And Azuh's advisor, Dr. Martha Rumschlag, began asking her personal questions, including about her children and husband, her sleeping and eating habits, and her childcare routines. (*Id*.) Rumschlag further suggested that Azuh start therapy. (*Id*.) Still, Azuh completed two more rotations in her residency.

In the winter of 2014, Rumschlag met with Azuh and informed her that she should leave the program before she got fired. (R 1, PID 7.) She also told Azuh that she would be required to undergo neuropsychological testing. (*Id*.)

Shortly after the meeting, Azuh met with Mitchell and relayed that Rumschlag wanted her to leave the program, that she was being treated differently than other residents, and that she wanted a different advisor. (R. 1, PID 7–8.) Azuh further told Mitchell that she was being harassed

by attending physicians, senior residents, and supervisors. (R. 1, PID 8.) Mitchell warned Azuh that Rumschlag was the Chair of the Clinical Competency Committee and that the psychological testing was mandatory. (*Id.*)

After her meeting with Mitchell, Azuh was restricted in the number of patients she could see. (*Id.*) This made it difficult for her to reach program goals. (*Id.*) Azuh also continued to be mistreated to the point that she "would feel compelled to resign." (R. 1, PID 9.) So Azuh began to apply for alternative residency programs, but her efforts were frustrated by Mitchell's refusal to provide her a letter of recommendation. (R. 1, PID 10–11.) The other programs also stopped contacting Azuh after they spoke with Mitchell. (*Id.*)

In February, 2015, Azuh met with Mitchell and Dr. Thomas Anan, her family medicine supervisor, to discuss her performance in her current rotation. (R. 1, PID 11.) Anan provided a good evaluation. (*Id.*) At that same meeting, Azuh was informed that, despite having scored well above average on her board exams, her contract would not be renewed and that she would still be required to undergo neuropsychological testing "for academic purposes." (R. 1, PID 11–12.)

In April 2015, Azuh signed her second-year residency agreement. (R. 1, PID 12–13.) She was informed, however, that her second year would be delayed by three months because of her maternity leave. (R. 1, PID 13.) Azuh continued to undergo the required psychological testing. (R. 1, PID 13–15.) She also found herself to be the only resident instructed to manage patients overnight, the only resident not allowed to present her cases to the next team after her shift, and the only resident forbidden from attending the second-year retreat with her colleagues. (R. 1, PID 14–15.)

In September 2015, Azuh informed Mitchell that she felt compelled to leave the residency program because of discrimination, harassment, and poor treatment. (R. 1, PID 16.) Mitchell

3

informed her that fewer credits than she earned would transfer to a new program. (R. 1, PID 16–17.) Azuh left the program one month later in October 2015. (R. 1, PID 17.)

She then filed a charge with the EEOC and, in January 2017, received a right-to-sue letter. (R. 1-1.) Providence now seeks to dismiss Azuh's lawsuit on the ground that her discrimination and retaliation claims are time barred pursuant to a statute of limitations provision in an employment application signed by Azuh. (R. 16.)

## II.

When a defendant moves to dismiss pursuant to Rule 12(c), the motion is evaluated under the same legal standards as Rule 12(b)(6). *Lindsay v. Yates*, 498 F.3d 434, 437 n. 5 (6th Cir. 2007). Under Rule 12(b)(6), the plausibility standard governs. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Under that standard, a court first culls legal conclusions from the complaint, leaving only factual allegations to be accepted as true. *Iqbal*, 556 U.S. at 679. The inquiry then becomes whether the remaining assertions of fact "allow[] the court to draw the reasonable inference that the defendant is liable[.]" *Id.* at 678.

On a motion to dismiss, the court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein. *See Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir.2001).

## III.

Providence asserts that Azuh signed an employment application that bound her to bring a lawsuit within 180 days of the activity underlying the legal action. But she filed both her charge with the EEOC and her complaint more than 180 days after she left the program. So Providence says her complaint must be dismissed. While Azuh raises a number of substantive arguments in

response, she also contends that a motion to enforce a contractually shortened statute of limitations should be done under Federal Rule of Civil Procedure 56 and not Rule 12. (R. 19, PID 252–54.) On this complaint, the Court agrees.

In resolving a motion to dismiss, the Court "is not permitted to consider matters beyond the complaint," *Mediacom Southeast LLC v. BellSouth Telecomm., Inc.*, 672 F.3d 396, 399 (6th Cir. 2012), unless they are referred to in the complaint and are central to the claims in the complaint, *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Providence's motion relies upon a provision in Azuh's employment application, which it attaches to its motion along with her residency-program agreement. (R. 16-3, 16-4.) Notably, Azuh never attached these documents to her complaint, nor are the documents central to her discrimination and retaliation claims. Thus, the employment application and residency-program agreement do not afford a basis to dismiss on the pleadings.

Providence resists this conclusion by reliance on a select batch of cases. But the cases are all distinguishable from Azuh's. In *Greenberg v. Life Insurance Co. of Virginia*, the Sixth Circuit affirmed a decision to consider the insurance policies attached to defendants' motion, because those policies were "referred to throughout the complaint" and because each cause of action in the complaint arose out of those policies. 177 F. 3d 507, 514 (6th Cir. 1999). In *Weiner v. Kalie & Co.*, the Sixth Circuit affirmed the lower court's decision to consider a benefit plan attached to defendant's motion because the plaintiff's claims were based on rights under the plan. 108 F. 3d 86, 89 (6th Cir. 1997). They did not, however, agree with the lower court's inclusion of other documents, as they were not mentioned directly or indirectly in the complaint. *Id.* Lastly, in *Brown v. Walgreens Income Prot. Plan for Store Managers*, the court considered the administrative record attached to defendant's motion, as the plaintiff brought a claim based on the denial of disability

5

benefits under an ERISA plan. No. 10-14442, 2012 WL 1060093, *2 (E.D. Mich. March 29, 2012). Thus, the administrative record of plaintiff's disability proceedings was central to the plaintiff's claim and verified what was in the complaint. *Id.*

Here, nothing in Azuh's complaint is reliant on her employment application. Indeed, the employment application is not referenced in the complaint. Nor does the complaint rely heavily on the terms and effect of the employment application. So the employment application does not verify the contents of her complaint. The Court will therefore not consider the employment application on a motion to dismiss. *See Mediacom Southeast LLC*, 672 F.3d at 399. And without this document, Providence cannot establish that Azuh filed her complaint in violation of any contractual statute of limitations.[1] While Azuh does briefly reference her second-year residency agreement in her complaint (R. 1, PID 12–13), that document does not contain a statute of limitations provision and therefore cannot establish that Azuh filed her complaint in violation of any contractual statute of limitations. As Providence never asks the Court to consider its motion as one for summary judgment in the event the Court did not consider the documents part of the complaint—and Azuh requests discovery should the motion be converted—the Court will not do so. *See, e.g., Chambers v. Sun West Mortg., Co.,* No. 13-399, 2014 WL 1577514, *5 (S.D. Ohio Apr. 18, 2014), *adopted by*, No. 13-00399, 2014 WL 1922838 (S.D. Ohio, May 14, 2014) (explaining that "[i]n a case such as this where matters outside the pleadings are presented with a motion to dismiss, the Court has two options: first, the Court may exclude the additional material and decide the motion to dismiss based only on the complaint; or second, the Court may treat the

---

[1] The Court will dismiss Providence's motion without prejudice. Providence can, if they so choose, raise this argument again in a motion for summary judgment.

motion to dismiss as a motion for summary judgment and rule on the motion as provided in Fed. R. Civ. P. 56.").

## IV.

For the foregoing reasons, the Court DENIES Providence's motion to dismiss. (R. 16.)

SO ORDERED.

Dated: April 10, 2018

s/Laurie J. Michelson
LAURIE J. MICHELSON
U.S. DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 10, 2018.

s/Keisha Jackson
Case Manager